[Civil No. 3223.   Filed January 15, 1934.]

[28 Pac. (2d) 616.]

GEORGE E. LILLEY and BRADY LILLEY, His Wife, Appellants, v. J. D. HALSTEAD LUMBER COMPANY, a Corporation, and SHOPE BRICK COMPANY OF PHOENIX, a Corporation, Appellees.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellants.

Messrs. Cunningham, Carson & Gibbons, for Appellee J. D. Halstead Lumber Company.

Messrs. Flanigan & Fields, for Appellee Shope Brick Company of Phoenix.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Maricopa county wherein J. D. Halstead Lumber Company, a corporation, hereinafter called the lumber company, and Shope Brick Company of Phoenix, a corporation, hereinafter called the brick company, foreclosed mechanics' liens against certain real estate belonging to George Lilley and Brady Lilley, his wife, hereinafter called defendants.

The facts necessary for a determination of the appeal are not seriously in dispute and may be stated as follows: In 1929, the Lilleys were the owners of certain real estate in Washington Park tract near Phoenix, Arizona. During the latter part of the year, they contracted orally to sell to one Bert Shuey the said real estate for the price of $476.82 which was to be paid when the building which it was agreed was to be erected on the premises by Shuey was completed. Shuey went to the lumber company and to the brick company to secure material for the construction of the building and some officer of each company talked with defendant George Lilley over the telephone inquiring in regard to the status of the matter and in each case was informed that he, Lilley, had made an arrangement with Shuey to build on the lot in question and that a loan would be made thereon by the Dwight B. Heard Investment Company, of which Lilley was president, when the building was completed. This last statement was later confirmed by a letter on a letter-head of the investment company signed by "George Lilley, President." After these two telephone conversations, both companies proceeded to furnish material for the erection of the building, but the purchase price thereof not having been paid, within the time fixed by law, they claimed and recorded certain mechanics' liens, and just before the expiration of the statutory six months in which suit may be brought on such a lien, the lumber company filed a complaint for foreclosure, making Lilley and his wife, Shuey and his wife, the brick company, and various other parties who had also filed liens, defendants. We need not consider these other parties as their interests are not involved in this appeal. The brick company filed an answer to the complaint one day before the six months in which it had the right to bring a suit for a foreclosure of its lien expired, in which answer it

admitted the allegations of plaintiff's complaint in regard to the erection of the building and plaintiff's lien thereon and set up the facts upon which its own lien was based and all of the matters which would have been necessary in a complaint for the foreclosure of such lien, and prayed for its foreclosure in accordance with law.

The defendants Lilley answered the complaint with a general denial, and then specifically answered paragraph 8 of the complaint in the following language:

"Defendants deny the allegations of paragraph VIII, and the whole thereof. Defendants admit that plaintiff filed its said notice and claim of lien on the 16th day of July, 1930."

They then pleaded to the answer of the brick company, with a general denial and further alleged that the latter's notice and claim of lien attempted to claim and create a lien among other things for certain cash advances which were indefinite and uncertain in amount and that the brick company did not bring an action for the foreclosure or enforcement of its lien within six months from the date it was filed.

Upon the issues raised by these pleadings a trial was had and judgment entered for foreclosure of the lien of the lumber company in the amount of $607.36 and of the brick company in the amount of $242 and against the defendants Shuey and wife personally for the full amount prayed for. From the judgment of foreclosure, the defendants Lilley have appealed.

There are eleven assignments of error which appellants, in accordance with our rules, classify under four legal propositions, claiming that the facts show the law set forth in these propositions was violated by the trial court in its judgment. We consider the appeal therefore, upon the propositions of law thus

stated and their applicability to the facts as developed upon the trial.

The first proposition is as follows:

"One who seeks to avail himself of the benefits of a mechanic's and materialman's lien must file his notice and claim of lien with the County Recorder, and within a reasonable time thereafter serve upon the owner of the premises sought to be charged the remaining copy."

This as an abstract proposition of law is doubtless true, for it is almost a verbatim quotation of section 2021, Revised Code 1928. It is the claim of defendants that there was no legal and competent evidence offered by the lumber company showing that it had complied with this rule. They base their contention substantially on the following argument. The complaint of the lumber company on this point alleges as follows:

"That on the 16th day of July, 1930 . . . this plaintiff caused to be prepared and filed and thereafter recorded . . . its notice and claim of lien duly verified, . . . and *at the same time* served upon said defendants true and correct copies thereof. . . . " (Italics ours.)

The only evidence in regard to the service upon the defendants of copies of the liens is the testimony of defendant Lilley as follows:

"Q. Were you served with copy of the notice of lien? A. Yes, I was.
"Q. Was your wife served also with copy of the notice of lien? A. Yes, I think she was also."

Defendants argue that this testimony was utterly insufficient to prove service on any particular date, and that it was necessary to prove not only the service, but when it was made. Much time is devoted by counsel in their briefs to an argument as to whether the answer of defendants was a negative pregnant in regard to the service of the notice or a

general denial. We think it unnecessary to determine this question. Assuming that the answer is a general denial of each and all of the allegations in regard to the service of the notice of lien, we think the true rule to be applied to this state of facts is that laid down by us in the case of *Slovenic National Benefit Society* v. *Dabcevich,* 30 Ariz. 294, 246 Pac. 765, to the effect that where a plaintiff has alleged either generally or specifically a compliance with the conditions precedent to a suit on an insurance policy, if the defendant desires to contradict any of such allegations, he must set up his defense thereto specifically and not merely by a general denial. We can see no reason why the same rule should not apply to a mechanic's lien. The purpose of pleadings is to advise the opposite party of the precise issue he is to meet. A general denial in the state of facts as shown by the record does not notify plaintiff that defendant intends to make the sufficiency of the service as actually made an issue. We hold, therefore, that the plaintiff having alleged in its complaint under oath that the notice of lien had been served in what as a matter of law would be a reasonable time, if defendants desired to raise an issue upon that point, they were compelled to do it by a specific and not by a general denial.

The next legal proposition is:

"A lien claimant cannot enforce his lien against the owners where the contractor is not the agent of the owners."

This again is undoubtedly a correct rule of law. The question, however, before us is whether or not under the facts of the case the contractor was as a matter of law the agent of the owner. Section 2020, Revised Code 1928, reads in part as follows:

" . . . Every contractor . . . or other person having charge or control of the construction . . . of any building, . . . shall be held to be the agent of the

owner for the purposes of this article, and the owner shall be liable, under the terms hereof, for the reasonable value of labor or materials furnished to his agent.''

The evidence on behalf of plaintiff on this point is the testimony of the credit manager of plaintiff who stated that he had a telephone conversation with Lilley in regard to the erection of the building as follows:

''I called Mr. Lilley regarding the construction of this house on this lot and told him that Bert Shuey was asking for materials to be delivered out there and that we couldn't furnish materials out there with the property in his name unless we had some arrangements made with him, because the lot was his. And the sum and substance of the conversation, as I recall it, was that he had some arrangement with Bert Shuey to build the house out there and that he would make him a loan when the house was done out there, and that he would give us a letter on that. I asked him for a letter. That is about all I can remember of the conversation. It has been a long time ago—a year.''

This, if true, was a direct statement by Lilley, after he had been informed that Shuey was seeking to purchase materials to be used in the erection of a building upon his, Lilley's, lot, that he had an arrangement with Shuey to build the house there. We think this would make Shuey within the terms of the statute Lilley's agent for the purpose of binding the lot with the lien. The same evidence, in substance, as to a conversation with Lilley by an officer of the brick company, appears in the record as to the claim of that company, and the same rule should be applied.

These are the only questions raised affecting the judgment in favor of the lumber company, and, for the reasons above stated, it must be affirmed. The other two apply only to the judgment of the brick company.

The third proposition of law is:

"In order for a notice and claim of lien to be valid, it must be apparent from the face thereof, where lienable and non-lienable items are included therein, the respective value or amounts of the lienable items; or stated differently, notices and claims of lien, to be valid, shall not contain 'lumping charges.'"

The recorded lien notice of the brick company stated that it was:

" . . . For the furnishing of materials for use in the construction of the improvements on said premises.

"That such materials consisting of brick, mortar and cash. . . .

"That there is now due and owing to the Shope Brick Company, after allowing all just credits and set-offs, the sum of $461.86. . . . "

It is, of course, true that "cash" is not material of a lienable nature and no lien could lawfully be claimed by the brick company for any cash which it may have delivered to the contractor to purchase material or labor for use on the premises. We have then a situation where on the face of the lien it appears that it is founded on three items, two of which are on their face lienable, and the third of which is not, and the amount claimed in the notice is in no manner segregated but is stated as what is called a "lumping charge." The question then is, May the lienholder offer extrinsic evidence as to the value of the lienable articles? It is the contention of defendants that he cannot, and, in support of their position, they cite us the case of *Wolfley* v. *Hughes,* 8 Ariz. 203, 71 Pac. 951. Therein we used the following language:

" . . . This objection is based upon the rule invoked in cases where a lumping charge has been made in support of an account composed of different items, some of which are of a character not entitled to be secured by a lien on the property, while

others are entitled to the protection of a lien if properly secured, and the account or claim of lien fails to designate the items or amount for which the property is liable. It is held in such cases that when it is impossible from the complaint and account to determine what part of the account charged is secured by the lien, and what part is nonlienable or unsecured, the court will not permit parol evidence to be introduced to cure the defect, and therefore the entire lien is lost. *Williams* v. *Toledo Coal Co.*, 25 Or. 496, 36 Pac. 161, 42 Am. St. Rep. 799; *Hughes* v. *Lansing*, 34 Or. 118, 55 Pac. 97, 75 Am. St. Rep. 574. . . ."

There is no doubt that, if this is the law in this jurisdiction, the contention of defendants must be sustained. It appears, however, from the facts in the case cited that the claim was fully itemized in the notice of lien, but showed on its face that some of the items were furnished within the time allowed for the filing of the lien and others without, and the court held that under such circumstances it was permissible for plaintiff by proof to segregate the items and declare a lien for those furnished within the statutory time, unless it appeared that the attempt to claim the lien for nonlienable articles was wilful. It is evident, therefore, that the principle of law quoted above was not applicable to the facts or necessary for the determination of the case. It was merely *obiter dicta* and we are therefore entitled to consider the question as one of first impression in this state.

We have examined the authorities cited by defendants upon this question, such as *Portland Hardwood Floor Co.* v. *Chas. K. Spaulding Logging Co.*, 64 Or. 321, 130 Pac. 52; *Getty* v. *Ames,* 30 Or. 573, 48 Pac. 355, 60 Am. St. Rep. 835; *Maryland Casualty Co.* v. *Lacios,* 121 Md. 686, 89 Atl. 323; *Cronin et al.* v. *Tatge,* 281 Ill. 336, 118 N. E. 35; *Gill* v. *Mullan,* 140 Md. 1, 116 Atl. 563; and a long series of cases of

which the ones cited are typical. We are of the opinion, after a careful examination and comparison of all of these cases, that some of the courts have failed to grasp the principle back of the true rule as laid down in the cases which properly enunciate it and have therefore at times made general statements of the law which are not justified in reason. We think the true rule may be stated as follows: Where the parties have entered into a contract which requires the furnishing of both lienable and nonlienable items, and the contract is a unit, so that it is obvious it was not in the minds of the party that separate charges should be made for the separate items, evidence may not be offered as to what the reasonable value of the different items were, so that the court may foreclose a lien for the articles which are lienable. Where the actual agreement of the parties is that a job is to be charged and paid for as a unit, it would be unjust for the court to treat it as a promise to pay for the items separately and thus make a contract for the parties which they did not make for themselves. When, however, the *original contract* was by agreement of the parties intended to be severable so far as the different items are concerned, but the lien claimant has inadvertently lumped all items in one sum in his claim of lien, we see no reason why he should not be allowed to prove the true facts and foreclose his lien for such articles as were of a lienable nature, when it does not appear that he has wilfully attempted to claim a lien for nonlienable articles. Our statute does not now require that the lien contain an itemized bill of particulars, as it did at the time *Wolfley* v. *Hughes, supra,* was decided. We hold, therefore, that, when the original contract on which the claim of lien is based was of such a nature that *by its terms* the character and value of the lienable articles could be determined separately from the nonlienable ones, even though such itemization does

not appear on the face of the claim of lien, it may nevertheless be proved by extrinsic evidence and the trial court in this case properly allowed this to be done.

The last proposition of law is that "no mechanic's or materialman's lien shall continue for a longer period than six months after the filing thereof for record, unless action be brought within such period to enforce the same."

This, of course, is a correct statement of law since it is almost verbatim section 2033, Revised Code 1928. The real question is whether the answer filed by the brick company in the action brought by the lumber company, in which it asked for a foreclosure of its lien, is within the meaning of section 2033, *supra*, "an action." While an action to foreclose a mechanic's or materialman's lien, being statutory in its nature, is to be enforced according to the terms thereof, it is nevertheless remedial in its nature, and, under our decisions and the express language of the Code, is to be liberally construed in order to effect the purposes for which it was initiated. *Steinfeld & Co.* v. *Allison Min. Co.*, 41 Ariz. 340, 18 Pac. (2d) 267; *Wylie* v. *Douglas Lbr. Co.*, 39 Ariz. 511, 8 Pac. (2d) 256, 83 A. L. R. 918; *State* v. *McEuen, ante,* p. 385, 26 Pac. (2d) 1005. Section 2035, Revised Code 1928, reads as follows:

"§ 2035. *Parties to Actions to Foreclose; Joinder; Interveners.* Lienors not contesting the claims of each other may join as plaintiffs, and when separate actions are commenced the court may consolidate them, and make all persons having claims filed parties to the action. Those claiming liens who fail or refuse to become parties plaintiff shall be made parties defendant, and those not made a party, may, at any time before final hearing intervene."

This, in substance, has been the law for many years, and it has always been the practice that, whenever many lienholders were parties to an action,

whether as plaintiffs or defendants, the court has regarded it as one action for the purpose of foreclosing all of the liens. In cases covered by section 2035, *supra,* section 2036, Revised Code 1928, provides that all of the liens are upon an equal footing and foreclosed as one, and, if the proceeds are not sufficient to pay them all, they are prorated. We think it is clear from these two sections that it was the intent of the legislature that all claims for liens against a certain piece of property should be litigated in one action, and that all lien claimants should be parties thereto and their rights determined therein. Such being the case, we think it would be extremely technical to hold that in order for the brick company to maintain its lien it must have filed a separate and distinct action which would under section 2035, *supra,* doubtless have immediately been consolidated with the present action, and which separate action could have raised no issues which were not raised by its answer in this action. The defendants evidently treated it as a cross-complaint for they answered it separately and the case was tried on that theory.

It is suggested that since the case, so far as the brick company is concerned, was tried on its amended answer, which was not filed until July 1st, much more than six months after the date of the filing of its lien, that it was not within time. We cannot agree with counsel. The filing of any amended pleading always dates back, so far as the statute of limitations is concerned, to the date of the original pleading. We have considered carefully and at length all of the questions raised by the defendants Lilley and are of the opinion that the judgment of the superior court of Maricopa county must be affirmed. It is so ordered.

ROSS, C. J., and McALISTER, J., concur.